UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| MITCHELL A. BURTON | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 3:11cv26 |
| | ) | |
| JONATHON GRAY, ANDREW WITT, | ) | |
| ERIK SCHLEGELMILCH, AND KEVIN | ) | |
| DOMBROWSKI, | ) | |
| | ) | |
| Defendants. | ) | |

OPINION AND ORDER

This matter is before the court on a motion for summary judgment filed by the defendants, Jonathon Gray ("Officer Gray"), Andrew Witt ("Officer Witt"), Erik Schlegelmilch ("Officer Schlegelmilch"), and Kevin Dombrowski ("Officer Dombrowski"), on May 23, 2012. The plaintiff, Mitchell A. Burton ("Burton"), filed his response on June 15, 2012. To which the defendants replied on September 25, 2012.

For the following reasons, the motion will be granted.

Summary Judgment

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Not every dispute between the parties precludes summary judgment, however, since "[o]nly disputes over facts that might affect the outcome of the suit under the governing law" warrant a trial. Id. To determine whether a genuine issue of material fact exists, the court must construe all

facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Heft v. Moore, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." Goodman v. Nat'l Sec. Agency, Inc., 621 F.3d 651, 654 (7th Cir. 2010).

Discussion

On December 25, 2010 officers of the South Bend Police Department were dispatched to the 600 block of N. Birdsell Street in South Bend, St. Joseph County, Indiana regarding a vehicle that had struck the front end of a truck. (Affidavit of Thomas J. Sanders, Deputy Prosecuting Attorney). Officers Witt, Gray, Schlegelmilch and Dombrowski responded to the call. When they arrived, they observed that a gray station wagon was on the wrong side of the street and had struck the front end of a properly parked truck. The Officers observed that the gray station wagon was occupied by one person who was incoherent or asleep at the wheel. The station wagon was observed to be in gear and running. (Affidavit of Thomas J. Sanders, Deputy Prosecuting Attorney).

Officers attempted to awaken the driver and sole occupant of the station wagon. When the driver, later identified as Burton, came to, he began to turn the wheel and step on the accelerator. Officers yelled at Burton to turn the vehicle off and get out of the car, but Burton did not comply. Officer Witt used a small tool to break the driver's window and opened the previously locked driver's door. When officers attempted to pull Burton out of the vehicle, he began swinging his arms and yelling "I have a pistol". (Affidavit of Thomas J. Sanders, Deputy Prosecuting Attorney).

As officers attempted to remove Burton from the vehicle, he began elbowing the officers and kicking at the officers. During the struggle, Officer Witt was kicked in the groin area and did not require medical attention. Officer Gray was elbowed in the head by Burton, kicked several times

2

in the upper legs and groin area. Officer Gray indicated pain in his right forearm, groin area and the right side of his head. (Affidavit of Thomas J. Sanders, Deputy Prosecuting Attorney).

Burton kicked Officer Schlegelmilch on his lower leg/knee area, struck Officer Schlegelmilch's side upper shoulder area and chest area with his left elbow numerous times. Officer Schlegelmilch indicated discomfort and pain to his lower legs and shoulder area from being kicked and elbowed by Burton. (Affidavit of Thomas J. Sanders, Deputy Prosecuting Attorney).

Plaintiff alleges he was brutally/viciously attacked and beaten without cause by the Defendant Officers. (Complaint Paragraph 1). He also claims he was falsely arrested and falsely charged with three counts of battery upon police officers. ( Complaint Paragraph 3).

In support of their motion for summary judgment, the defendants contend that none of the Defendant Officers used excessive force in the arrest of Burton. Burton's claim that the Defendant Officers employed excessive force during the course of the arrest is to be analyzed under the Fourth Amendment and its reasonableness standard. Brownell v. Figel, 950 F.2d 1285, 1292 (7th Cir. 1991). The question is whether the actions of the police officers were objectively reasonable in light of the facts and circumstances confronting the officers, without regard to their underlying intent or motivation. Brownell, 950 F.2d at 1292. Reasonableness in this context is to be judged from the perspective of a reasonable officer on the scene, rather than with the "20-20 vision of hindsight." Brownell, 950 F.2d at 1292. While the Courts have not provided a precise definition of "reasonable", the Court has required "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396 (1989).

The defendants argue that in the present case it was reasonable, under the totality of the

3

circumstances, for Defendant Officers to remove Burton from the vehicle. In this case, Burton attempted to drive the vehicle away from the scene. Burton defied the officers' orders to turn off the vehicle and to exit the vehicle. Burton made a statement that he had a pistol. The officers gave Burton every opportunity to peacefully exit the vehicle. However, once Burton chose not to take advantage of this offer, he was forcibly removed from the vehicle. Defendant Officers contend that they used only that amount of force necessary and that they believed reasonable under the circumstances to subdue Burton and get him fully out of the vehicle.

The Court was clear in <u>Brownell</u> that the reasonableness of Defendants' use of force will not be judged with 20-20 hindsight, but rather from the perspective of the reasonable officer presented with the facts that were known by the officers at the time. The defendants strongly contend that the Defendant Officers acted reasonably under the facts of this situation; the incident happened in the dark of night, Burton was incoherent or asleep in a vehicle apparently involved in an accident and with the engine still running, Burton attempted to leave the scene and made threats to the police officers by telling them he had a pistol.

Burton attempts to raise factual issues by first claiming that the officers did not have a reason to be on the scene on Birdsell Street at the time of the incident. However, the record is clear that a neighbor, Mr. Northcutt, called the police twice, first to report a suspicious vehicle, and then to report that the vehicle had bumped into a parked vehicle. (Northcutt Dep. at 4-5). Burton also asserts that there is a factual issue as to whether his car was actually in gear at the time the police arrived. However, the witnesses at the scene testified that Burton's car was in gear and running (Northcutt Dep at 11), and this testimony is backed by the police video which was submitted in evidence. It is further clear that Burton did not respond to the officers'

4

commands to take the car out of gear or turn the car off. (Gray Dep. at 12, Witt Dep. at 20). Without a doubt, a reasonable officer could believe that Burton was attempting to flee the scene and/or resist arrest with a potentially deadly weapon, the vehicle. In fact, one of the officers returned to his vehicle to retrieve his "stop stick", in case Burton attempted to flee by driving away. (Schlegelmilch Dep. at 12).

In any event, Burton's claims are barred by collateral estoppel. Collateral estoppel bars subsequent litigation if the fact or issue was adjudicated in the previous litigation. *Nolan v. City of Indianapolis*, 933 N.E.2d 894, 897 (Ind. App. 2010). A two-part analysis determines whether collateral estoppel should be employed in a particular case: (1) whether the party against whom the former adjudication is asserted had a full and fair opportunity to litigate the issue and (2) whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel in the current action. *Id*.

In Burton's criminal trial, he litigated four issues. The counts against him included three charges of battery on the officers present at the time of the arrest and one count of resisting arrest. At trial, probable cause was determined to exist. The jury also concluded that Burton was guilty of resisting arrest. Clearly, Burton (who was represented by counsel at his criminal trial), had every incentive to litigate the lawfulness of his arrest. Yet Burton offers no evidence that he did not have a full and fair opportunity to litigate the issue of probable cause.

Burton notes that he was acquitted of the battery charges and concludes that this raises a material issue of fact as to whether he resisted arrest. However, his acquittal only shows that the prosecuting attorney did not prove these claims beyond a reasonable doubt and does not constitute evidence that a battery did not occur. Burton was, after all, convicted of resisting

5

arrest. Burton relies on Mr. Northcutt's testimony, yet Mr. Northcutt states that he could not "really actually see what was going on" because he "really can't see nothing over" at the scene from his house. (Northcutt Dep. at 14). Mr. Northcutt specifically testified that "I could not see if he was resisting or anything of that sort, because you know, there was a blind side." (Northcutt Dep. at 15). Burton also relies on the testimony of another neighbor, Mr. Alexander. However, Mr. Alexander did not see Burton tased (which is undisputed), and admitted that he did not see everything that happened at the scene. (Alexander Dep. at 12).

The testimony from the officers establishes that Burton was elbowing and kicking the officers as they attempted to remove him from his car. (Gray Dep. at 15-23, Schlegelmilch Dep. at 16). Moreover, this testimony is affirmed by the police video which shows an immediate scuffle after the police broke the car window and began to extract Burton from the vehicle. Clearly, if Burton had been politely obeying the police commands, he would have never been convicted of resisting arrest. As such, collateral estoppel bars his claims.

Additionally, even if Burton had raised a question of fact and was not barred by collateral estoppel, it is clear that the officers are entitled to qualified immunity on all claims against them in their individual capacities. The Supreme Court case of *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151 (2001), set out the analysis to be employed by the Court in addressing the issue of qualified immunity for the defendants in their individual capacities as law enforcement officers. The Court outlined a two step analysis for qualified immunity whereby the Court must: (1) first determine whether a constitutional violation occurred and (2) if a constitutional violation is established, a determination must be made as to whether the officer's conduct violated "clearly established standards." *Saucier*, 121 S. Ct. at 2158. Once a defendant raises a qualified immunity

6

defense, it is the Plaintiff's burden to demonstrate the violation of a clearly established right. *Foreman v. Richmond Police Department*, 104 F.3d 950, 957 (7th Cir. 1997), cert. denied, 522 U.S. 997 (1997). The doctrine of qualified immunity is an immunity from suit rather than a mere defense to liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Qualified immunity protects governmental officials such as police officers "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Groh v. Ramirez*, 540 U.S. 551, 567 (2004). Qualified immunity covers mistakes of judgment whether the mistake is one of fact or law. *Butz v. Economou*, 438 U.S. 478, 507 (1978).

However, recently, the Supreme Court reconsidered *Saucier* and ruled that the judges of the district courts and courts of appeals "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. *Whitlock v. Brown*, 596 F.3d 406, 410 (7th Cir 2010), citing *Pearson v. Callahan*, 555 U.S. 223 (2009).

In the present case, the Officers broke the driver's window, opened the locked door and removed Burton from the vehicle. Burton physically and violently resisted the Officers' attempts to remove him from the vehicle. The law has long held that a police officer may use a reasonable amount of force in order to effectuate an arrest.

An analysis of the present case leads to the conclusion that all of the defendants' actions were reasonable and comported with the Fourth Amendment and thus they are entitled to qualified immunity for their actions. As set forth above, the Officers first attempted to communicate with Burton. When Burton awoke, he attempted to leave the scene. Burton refused to comply with the Officers' commands and continued to resist by striking at the Officers as he was being removed from the vehicle. The Officers attempted to subdue Burton whom they reasonably believed was resisting arrest and posed a threat. It would have been a dereliction of their public safety responsibilities to assume that an individual in Burton's situation did not pose a threat to the Officers or others. Thus, they acted correctly in subduing and arresting Burton.

As stated above, the doctrine of qualified immunity applies where the police officer's mistake is one of law or fact. Here, the police officers' mistakes, if any, were reasonable mistakes of fact. Therefore, the defendants are entitled to qualified immunity and Burton's claims fail as a matter of law.

## Conclusion

On the basis of the foregoing, the motion for summary judgment [DE 114], is hereby GRANTED.

Entered: October 2, 2012.

s/ William C. Lee
William C. Lee, Judge
United States District Court